FILED
MAY 20 2008
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

***POSTED ON WEBSITE***
***NOT FOR PUBLICATION***

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 06-20116-D-13L |
| | ) | |
| STEVEN TODD GLAZIER and TAMARA KAY GLAZIER, | ) | Docket Control No. GG-3 |
| | ) | |
| | ) | Date: May 13, 2008 |
| Debtors. | ) | Time: 1:00 p.m. |
| | ) | Dept: D |

**MEMORANDUM DECISION**

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

On March 7, 2008, Steven Todd Glazier and Tamara Kay Glazier ("the Debtors") filed a Motion to Approve Debtors' Third Amended Plan ("the Motion"), in which they sought confirmation of a modified chapter 13 plan. On March 19, 2008, Lawrence J. Loheit, the Chapter 13 trustee in this case ("the Trustee"), filed an objection to the Motion. For the reasons set forth below, the court will deny the Motion.

## I. INTRODUCTION

On January 19, 2006, the Debtors filed a voluntary chapter 13 petition,[1] thereby commencing this case. On April 17, 2006, the Debtors filed an amended chapter 13 plan that was confirmed by order dated August 3, 2006.

---

1. Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated after the effective date (October 17, 2005) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).

On March 7, 2008, the Debtors filed the Motion, by which they seek confirmation of a modified plan, entitled Third Amended Chapter 13 Plan, also filed March 7, 2008 ("the plan" or "the modified plan"). The modified plan provides for the following priority claims: Internal Revenue Service ("IRS"), $35,000; Franchise Tax Board ("FTB"), $5,000; State Board of Equalization ("SBE"), $6,375.50.[2] The modified plan provides that "[t]he priority creditors will be paid 60% of their claim. The balance of the priority debt will be paid after completion of the plan."[3] Although the IRS, by way of a filed proof of claim, asserts a secured tax claim for $20,935.95, the modified plan does not provide for any secured tax claims.

The Trustee objected to confirmation of the modified plan on the grounds that it fails to provide for the secured claim of the IRS, as required by 11 U.S.C. § 1325(a)(5), and fails to provide for payment in full to priority creditors who have not accepted the terms of the plan, contrary to § 1322(a)(2). No other party filed an opposition to the Motion. On May 7, 2008, the Debtors filed a supplemental brief in support of the modified plan, in

---

2. By contrast, as of March 7, 2008, the taxing agencies, by way of filed proofs of claim, assert priority claims in the amounts of $47,199.87 (IRS), $3,932.05 (FTB), and $6,375.50 (SBE). Thus, the plan correctly lists only one of the priority claims, that of the SBE. The Debtors have never objected to any of these claims.

These discrepancies, although curious, are not relevant to the treatment of these claims, because the plan provides that, as between the plan and filed proofs of claim, the proofs of claim control. See Debtors' modified plan, section 5.04.

3. The plan confirmed August 3, 2006 does not contain the 60% limitation or any other limitation on the payment of priority claims.

which they addressed the issue of the priority claims but made no mention of the IRS's secured claim.

A hearing was held on May 13, 2008, at which Gerald Glazer appeared for the Debtors and Neil Enmark appeared for the Trustee.[4] Both alluded to the decision of the Ninth Circuit Court of Appeals in Great Lakes Higher Educ. Corp. v. Pardee, 193 F.3d 1083 (9th Cir. 1999). The court then took the matter under submission.

The issue in this matter is whether a priority creditor's failure to object, prior to confirmation, to a plan calling for less than full payment of its claim constitutes agreement to such treatment within the meaning of 11 U.S.C. § 1322(a)(2). As that question will be answered in the negative, it is not necessary that the court reach the second question; namely, whether a plan may be confirmed that does not provide for a secured claim evidenced by a filed proof of claim.

## II. ANALYSIS

This court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

A chapter 13 plan shall "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim . . . ." 11 U.S.C. § 1322(a)(2). The priority portions of the tax claims filed by the IRS, FTB, and SBE, in the amounts listed in their

4. None of the taxing agencies appeared.

proofs of claim, fall within § 507(a)(8), and thus, are governed by § 1322(a)(2). Because the plan provides for the payment of only 60% of these priority claims, the plan appears not to comply with § 1322(a)(2).

The Debtors argue that the failure of the taxing agencies to object to the plan constitutes their agreement to the proposed 60% treatment, within the meaning of § 1322(a)(2). The Debtors cite In re Todd, 1998 Bankr. LEXIS 2473 (Bankr. N.D. Cal. 1988), In re Lindgren, 85 B.R. 447 (Bankr. N.D. Ohio 1988), and In re Hebert, 61 B.R. 44 (Bankr. W.D. La. 1986).

These cases differ in significant respect from the case at hand, because all dealt with plans challenged after confirmation. Thus, the issue in each case was whether the confirmed plan, although it did not comply with some requirement of the Code, was nevertheless binding on the creditor under 11 U.S.C. § 1327(a) and principles of res judicata. See Todd, 1998 Bankr. LEXIS 2473 * 2 ["The issue here is not whether the plan should have been confirmed but whether, having been confirmed, it is binding as to the IRS, which received proper notice of it and did not object to its confirmation."].

The court in each of these cases relied on § 1327(a) in concluding that the creditor who later objected to the confirmed plan was bound by its terms. Id.; Lindgren, 85 B.R. at 449; Hebert, 61 B.R. at 47. None of these cases supports the proposition that a priority creditor's silence prior to confirmation should be taken as agreement to less than 100% payment, such that the court should confirm the plan in this case.

The Debtors' reliance on Pardee is misplaced for the same reason; namely, that the issue in that case was whether to give res judicata effect to a final order confirming a plan, not whether to confirm a plan in the first instance.[5] The distinction was aptly described in Patton v. U.S. Dep't of Educ. (In re Patton), 261 B.R. 44 (Bankr. E.D. Wash. 2001). Relying on Pardee to uphold a confirmed plan, the court stated:

> The Court's ruling should not be interpreted as an approval or validation of the plan language at issue. . . . [Citations omitted.] This Court will not knowingly confirm a plan which contains language that attempts to discharge student loan debt independent of an adversary proceeding. [Footnote omitted.] Inclusion of plan provisions which attempt to circumvent determination by adversary proceeding of dischargeability of student loans through the plan confirmation process is improper, but plans confirmed with such provisions will be binding on the parties if the confirmation order is not appealed or revoked.

Patton, 261 B.R. at 48 (emphasis added).

The Motion calls upon this court not to uphold or enforce a confirmed plan but to confirm a modified plan. Thus, the question is whether the court may knowingly confirm a plan that on its face does not comply with § 1322(a)(2) by construing the silence of the taxing agencies as agreement to the 60% treatment, and on that basis, find compliance with § 1322(a)(2).[6]

/ / /

5. The Ninth Circuit Bankruptcy Appellate Panel had expressly determined that the plan in the Pardee case should not have been confirmed with the provision subsequently challenged by the creditor. See Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee), 218 B.R. 916, 926 (9th Cir. BAP 1998).

6. "Fortunately, the potentially troublesome provision in this case was identified before confirmation. This allows an unrestricted examination of the merits of the provision unfettered by res judicata issues." In re Mammel, 221 B.R. 238, 240 (Bankr. N.D. Iowa 1998).

The court begins with the proposition that "it is the independent duty of the bankruptcy court to ensure that the proposed plan comports with the requirements of the bankruptcy code." Universal Am. Mort. Co. v. Bateman (In re Bateman), 331 F.3d 821, 828 n. 6 (11th Cir. 2003); see also Pardee, 218 B.R. at 939 (9th Cir. BAP 1998) (Klein, J., dissenting) ["regardless of whether a creditor or the trustee objects, the bankruptcy court had an independent duty to confirm only those plans that meet confirmation standards."]. As a corollary, "one is entitled to expect that the bankruptcy court will perform its independent duty to confirm only those plans that do not contravene the Bankruptcy Code and rules of procedure." Educ. Credit Mgmt. Corp. v. Repp (In re Repp), 307 B.R. 144, 152 (9th Cir. BAP 2004); see also Pardee, 218 B.R. at 939 (Klein, J., dissenting) ["Great Lakes was entitled to expect the chapter 13 trustee and the court to do their jobs."].

Thus, in cases where the failure of a plan to comply with the requirements of the Code is brought to the court's attention prior to confirmation, the courts have denied confirmation. In In re Northrup, 141 B.R. 171 (N.D. Iowa 1991), a case virtually identical to the instant case, the bankruptcy court denied confirmation of a plan that did not provide for payment of priority claims in full. The district court affirmed, rejecting the debtors' argument that a creditor who fails to object to the plan should be deemed to have agreed to less than full payment. The court held that "an express affirmation of consent is required to meet the requirements of 11 U.S.C. § 1322(a)(2)." 141 B.R. at 173.

In In re Ferguson, 27 B.R. 672 (Bankr. S.D. Ohio 1982), the court denied confirmation of a chapter 13 plan providing for payments totaling 60% of priority claims, because the IRS and the state taxing agency had not expressly agreed to such treatment. 27 B.R. at 672.

That the Debtors in the present case propose to pay the balance of the priority claims after completion of the plan does not affect the analysis. In In re Smith, 212 B.R. 830 (Bankr. E.D. Va. 1997), the court denied confirmation of a plan providing for 20% to the priority tax creditor and further providing that the unpaid priority taxes would not be discharged upon completion of the plan, but would continue to be an obligation of the debtors. The court held that the taxing agency's failure to object to the plan did not constitute consent under § 1322(a)(2). 212 B.R. at 831.

Further, the language of the proposed modified plan undercuts the Debtors' argument. Section 3.18 of the plan provides:

> If the holder of a priority claim has agreed to accept less than payment in full, [. . .] the identity of the claim holder and the treatment proposed shall be included in the Additional Provisions below. The failure to provide a treatment for a priority claim that complies with section[ ] 1322(a)(2) [. . .] is a breach of this plan.

Thus, the plan allows the Debtors to identify and provide less than full payment for a priority creditor who has agreed to accept such treatment, not for one who might impliedly agree to such treatment by its failure to file an objection to the plan. The priority creditors in this case were entitled to rely on the language of section 3.18, knowing that they had not affirmatively

accepted the plan, at least as far as the court was aware, and to rely on the court's independent duty to verify that the plan complied with the Code.

As another court has said of student loan creditors,

> [i]t is inappropriate to bind these creditors to a determination which unilaterally changes the rules. This is particularly true when a default is sought in a proceeding in which the student loan creditors may well have no reasonable expectation that they were required to participate to preserve their rights.

Mammel, 221 B.R. at 243.

The court finds that the priority creditors in this case, like the student loan creditors in Mammel, had no reasonable expectation that the court, in the exercise of its independent duty, would allow the 60% provision to prevail over the language of section 3.18 and despite the absence of any affirmative indication that the priority creditors had agreed to the 60%.[7]

Finally, from the language of section 3.18 of the modified plan, quoted above, it appears that the failure to provide for full payment, absent the creditors' express agreement, puts the

---

7. See also Pardee, 218 B.R. at 939-40 (Klein, J., dissenting), in which Judge Klein explained that

> implied acceptance is a troublesome theory that has been largely discredited in all but one application: the formality of acceptance of a chapter 13 plan by a secured creditor whose claim is not being treated in accord with statutory standards may be implied from silence.

Judge Klein concluded that "[t]o the extent that the implied acceptance theory has any vitality, it is an unwarranted extension for the majority to apply it to nondischargeable claims of unsecured creditors." Id. at 941. This court finds that application of implied acceptance to priority creditors, where the requirement of § 1322(a)(2) is not met, would also be unwarranted.

Debtors in breach of the proposed plan at this time. The court will not confirm a plan if the Debtors are in breach of it.

The court recognizes that the likely reason for the proposed 60% payment through the plan is that the Debtors' disposable income is insufficient to allow them to pay 100% within the maximum term of the plan. For this reason, apparently, they propose to pay the balance of the priority claims after completion of the plan. If the priority creditors in fact consent to such treatment, it should be a simple matter for the Debtors to obtain their express written agreement.

III. CONCLUSION

For the reasons set forth above, the court concludes that a priority creditor's failure to object, prior to confirmation, to a plan calling for less than full payment of its claim does not constitute agreement to such treatment within the meaning of 11 U.S.C. § 1322(a)(2). Because the priority creditors in this case have not agreed to the treatment of their claims provided by the Debtors' proposed modified plan, and because the plan does not provide for the full payment, in deferred cash payments, of all priority claims, the court concludes that the plan does not meet the requirement of § 1322(a)(2). Therefore, the court will enter an order denying the Motion.

Dated: May 20, 2008

Robert Bardwil

ROBERT S. BARDWIL
United States Bankruptcy Judge

**Certificate of Service**

I certify that on MAY 20 2008 a copy of the **foregoing document** was mailed to the following:

Office of the United States Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814

Lawrence Loheit
P.O. Box 1858
Sacramento, CA 95812-1858

Gerald Glazer
660 J Street, #380
Sacramento, CA 95814

FOR THE COURT
RICHARD G. HELTZEL
CLERK, U.S. BANKRUPTCY COURT

By: [signature]
Andrea Lovgren, Deputy Clerk